IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHERIE BUTKO, )<br>           Plaintiff,  )<br>                         )<br>vs.                       )<br>                         )<br>UNISON ADMINISTRATIVE SERVICES, )<br>LLC.; UNITED HEALTHCARE  )<br>SERVICES, INC.,               )<br>           Defendants.  ) | Civil Action No. 09-918<br>Judge Joy Flowers Conti/<br>Chief U.S. Magistrate Judge Amy Reynolds Hay |

REPORT AND RECOMMENDATION

I.      RECOMMENDATION

Plaintiff, Sherie Butko ("Ms. Butko") commenced this lawsuit against defendants, Unison Administrative Services, LLC and United Healthcare Services, Inc. (collectively, "United"), alleging that United violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), *et seq.*, when it terminated her employment in November of 2008. United has filed a motion to compel arbitration arguing that Ms. Butko entered into a contract, the UnitedHealth Group Employment Arbitration Policy ("the Policy"), under which she became obligated to arbitrate her claims. For the reasons that follow, it is respectfully recommended that the motion be granted.

II.     REPORT

    A.    Background

It appears undisputed that Ms. Butko began her employment with United on November 20, 2006, and that on April 28, 2008, began leave due to complications in her

pregnancy. Complaint ¶¶ 7, 8 [Dkt. 1]. Ms. Butko's daughter was born on August 16, 2008, seven weeks premature, and suffers from severe impairments. Id. at ¶¶ 9-11. According to the complaint, Ms. Butko received a letter from her boss, Jane Nemetz, on November 17, 2008, stating that Ms. Butko was to return to work on November 19, 2008, or United would consider her to have voluntarily resigned. Id. at ¶¶ 14, 15. Apparently unable to find enough nursing care for her daughter, Ms. Butko did not return to work on November 19, 2008, and consequently was "fired." Id. at 16, 17.

Ms. Butko filed the instant complaint on July 15, 2009, bringing a claim for pregnancy and gender discrimination under Title VII (Count I), and a claim under the ADA alleging that United fired Ms. Butko because of her association with her disabled child (Count II).

United's motion to compel arbitration is now before the Court.

B.   Standard of Review

In deciding a motion to compel arbitration, the inquiry, like that in deciding a motion for summary judgment, is whether there is a "'genuine issue of fact concerning the formation of the agreement' to arbitrate." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 159 (3d Cir. 2009), quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir. 1980). Only where no such issue exists should the motion be granted. Id. "In making this determination, the party opposing arbitration is entitled to 'the benefit of all reasonable doubts and inferences that may arise.'" Id.

C.   Discussion

As previously discussed, United contends that Ms. Butko is obligated to arbitrate

her claims because they are within the scope of the arbitration provision of the Policy she entered into with United.

> As recently reiterated by the Court of Appeals for the Third Circuit:
>
> The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. ("FAA"), creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes. . . . Congress designed the FAA to overrule the judiciary's longstanding reluctance to enforce agreements to arbitrate and its refusal to put such agreements on the same footing as other contracts and in the FAA expressed a strong federal policy in favor of resolving disputes through arbitration. . . . In particular, the FAA provides that as a matter of federal law "[a] written provision" in a maritime or commercial contract showing an agreement to settle disputes by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 522 (3d Cir. 2009) (internal citations omitted). Although there is a strong federal policy favoring arbitration, the FAA nevertheless requires the court to first determine: (1) whether the parties entered into a valid agreement to arbitrate; and (2) whether the dispute at issue falls within the scope of that agreement. Id. at 523, citing Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d at 160. "To determine whether the parties have agreed to arbitrate, we apply 'ordinary state-law principles that govern the formation of contracts.'" Id. at 524, quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

Ms. Butko and United appear to agree that Pennsylvania law applies here. "In general, to determine whether a contract was formed under Pennsylvania law, a court must look to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was

consideration." Id. at 533, citing Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd., 559 Pa. 56, 739 A.2d 133, 136 (1999).  The instant dispute revolves around the first inquiry, i.e., whether Ms. Butko manifested an intent to be bound by the terms of the Policy.

United contends that Ms. Butko evidenced an intent to be bound when she signed the Policy which states that arbitration is the exclusive forum for the resolution of most employment related disputes and expressly covers "any dispute UnitedHealth Group might have with a current of former employee which arises or relates to employment."[1]  Def. Exh. A: The Policy, Section B [Dkt. 3-1].  The Policy further provides that:

> A dispute is based on a legal claim and is subject to this Policy if it arises or involves a claim under any federal, state or local statute . . . regarding or relating to employment discrimination, terms and conditions of employment, or termination of employment including, but not limited to, the following: Title VII of the Civil Rights Act of 1964 . . . [and] the Americans With Disabilities Act . . . .

Id.  Moreover, in the first section of the Policy, in bold letters, it states that "Acceptance of employment or continuation of employment with UnitedHealth Group is deemed to be acceptance of this Policy."  Id., Section A.

United maintains that Ms. Butko is bound by these provisions having acknowledged receipt of the Policy and accepted it by her continued employment with United. See Bauer v. Pottsville Area Emergency Medical Services, Inc., 758 A.2d 1265, 1269 (Pa. Super. 2000), quoting Darlington v. General Elec., 350 Pa. Super. 183, 210-12, 504 A.2d 306, 320 (Pa. Super. 1986) ("In the employment context, the communication to employees of certain rights,

---

[1] It appears that Unison was acquired by United on May 30, 2008, and that as part of the transition, United sent electronically its personnel policies, including the Policy, to all of Unison's employees.  See Def. Brief, pp. 3-4 [Dkt. 4]; Def. Reply, Exh. A: Anderson Decl. ¶¶ 1, 2.

4

policies and procedures may constitute an offer of an employment contract with those terms. The employee signifies acceptance of the terms and conditions by continuing to perform the duties of his or her job; no additional or special consideration is required"). Indeed, the copy of the Policy submitted by United includes an acknowledgment from Ms. Butko that she received it electronically on June 18, 2008. Because, by her own complaint, she continued to be employed by United until November of 2008, it would appear that she has demonstrated an intent to be bound by the Policy.

Citing to <u>Kirleis v. Dickie, McCamey & Chilcote, P.C.</u>, 560 F.3d at 160-61, Ms. Butko contends that merely acknowledging the receipt of the Policy is not sufficient to manifest an intent to be bound by the arbitration provisions set forth therein as the law requires that there be an express, unequivocal agreement to arbitrate before a party to a lawsuit can be ordered to do so. Since deciding <u>Kirleis</u>, however -- indeed, six days after Ms. Butko filed her brief in this matter -- the Court of Appeals for the Third Circuit backed away from the "express" and "unequivocal" standard previously utilized in assessing arbitration agreements finding that it impermissibly requires more of arbitration agreements than of contracts generally. <u>Id.</u> at 527-32. Specifically, the Court found that:

> when determining whether there is a valid agreement to arbitrate between the parties, the first part of the two-step inquiry, we apply ordinary state-law principles of contract law. *First Options*, 514 U.S. at 944, 115 S. Ct. at 1924. Because the FAA requires us to place arbitration agreements on an equal footing with other contracts when determining whether the parties have agreed to arbitrate, we cannot subject a purported arbitration agreement otherwise within the scope of the FAA and satisfying its requirements to a standard more demanding than that which we would apply to other agreements under the applicable state law. To be sure, genuine issues of fact preclude summary judgment

5

> when determining whether there is an agreement to arbitrate, just
> as they do when determining the existence of any other contract.
> See Fed.R.Civ.P. 56(c). But the FAA and Supreme Court
> precedent forbid us from placing more stringent requirements on
> arbitration agreements otherwise satisfying the criteria of the FAA
> than on other contracts, such as a substantive requirement that an
> arbitration agreement be "express" and "unequivocal" to be
> enforceable, rather than the standard that applies to contracts
> generally.

Id. at 532. As such, Ms. Butko's argument that no valid agreement to arbitrate exists because simply accepting the Policy does not meet the "express" and "unequivocal" standard is without merit.

Nevertheless, Ms. Butko has submitted a declaration in which she states that she has never seen a copy of the Policy, that she was never provided with a copy of it, and that she never signed any agreement or document agreeing to arbitrate her claims. Pl. Exh. 1: Ms. Butko Decl. ¶¶ 12-16 [Dkt. 8-1]. Ms. Butko further declares that the electronic acknowledgment submitted by United "could not possibly be correct, because [she] was not even working for UnitedHealth Group at the time listed on the document" as she "was on pregnancy leave on June 18, 2008." Id. at ¶ 17. Based on these representations, Ms. Butko concludes that she could not have agreed to abide by the terms of or have demonstrated an intent to be bound by the Policy and, thus, no valid contract to arbitrate exists.

United has replied in kind submitting what appears to be compelling evidence that, notwithstanding her declaration, Ms. Butko did in fact receive the Policy, acknowledged having done so, and agreed to its terms.[2] Despite the apparent conclusiveness of United's

---

[2] Specifically, United has submitted the declaration from Ms. Butko's Manager, Jane Nemetz, attached to which is a series of e-mails between her and Ms. Butko during the relevant time period, which demonstrate that Nemetz e-mailed Ms. Butko on June 12, 2008, while she was on leave, to advise her that

evidence, the Court is nevertheless constrained to find that Ms. Butko's Declaration creates a genuine issue of fact regarding her acceptance and, thus, the validity of the Policy and precludes the granting of United's motion on this basis.  See Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d at 161-62, citing Par-Knit Mills, 636 F.2d at 54 ("Had the Firm submitted contradictory evidence showing that Kirleis had received the bylaws or had signed them, its argument regarding the sufficiency of Kirleis's affidavit would merit further discussion. Even then, the task of weighing the evidence and choosing which side to believe would have been for a jury").  See also 9 U.S.C. § 4.

      United also argues, however, that regardless of whether Ms. Butko is bound by the terms of the Policy she is nevertheless bound by the Confidentiality and Arbitration Agreement

---

a webcast meeting regarding United employee benefits and required employment paperwork was being held online for employees that could not attend a meeting in person.  Def. Reply Exh. B: Nemetz Decl. ¶¶ 1, 2 & Exh. 1 [Dkt 9-2].  Later that same day, Nemetz sent another e-mail providing Ms. Butko with information she would need to access HR Direct, United's online enterprise application used to facilitate human resource functions and the management of employment paperwork, in order to fill out required paperwork.  Nemetz Decl., Exh. 2.  See Def. Reply Exh. A: Anderson Decl. ¶¶ 4, 6 [Dkt 9-1].  The e-mails show that on June 16, 2008, Ms. Butko responded that she had viewed the webcast and would log on to United's website later on to complete the requisite paperwork.  Nemetz Decl., Exh. 1.  United has also submitted a declaration from Arley W. Anderson, a manager in United's Information Systems, in which he states that the required completion of the Policy is done through HR Direct and that in order to access HR Direct each employee must use an assigned unique user identification number as well as the last four digits of their social security number.  Anderson Decl. ¶¶ 7, 9.  The employee then chooses a unique password, which is only known to them and is individually encrypted.  Id. at ¶¶ 9, 11, 12.  Attached to Mr. Anderson's declaration is an HR Direct activity screen shot for Ms. Butko's account dated June 18, 2008, showing that she completed online the paperwork relating to payroll direct deposit, a W-4 form, personal contact information and an acknowledgment of the Policy.  Id. at ¶¶ 16, 17 & Exhs. 2-4; Def. Exh. A [Dkt. 3-1].  Indeed, the evidence shows that there is a specific button on the "New Employee Forms" screen that is labeled "Arbitration Acknowledgment" that Ms. Butko had to click in order to bring the Policy on to the screen.  Anderson Decl., Exh. 1.  Once on the screen, the top of the page contained a request to "[r]eview and [a]cknowledge at the bottom of this page," which was immediately followed by a copy of the Policy.  The Policy, was then followed by a box for the employee's c-signature with the direction to "click the button below to capture your acknowledgment."  Id. at Exh. 5.  That button on its face reads, "I have read and agreed to the above."  Id.  As previously discussed, United has presented evidence that Ms. Butko completed this process, acknowledging and accepting the terms of the Policy, on June 18, 2008.  Def. Exh. A.

("Agreement") she entered into with Unison, a named defendant in this case, in November of 2006 when she began her employment. United has submitted a copy of the Agreement which is not only physically signed and dated by Ms. Butko, but, like the Policy, expressly provides that disputes relating to employment, including any claims arising under Title VII and the ADA, are covered under the Agreement and subject to arbitration. Def. Exh. 1: The Agreement, ¶ 3 [Dkt. 4-1]. Moreover, United has also provided the Court with the letter sent by Unison dated November 15, 2006, offering Ms. Butko employment which indicates that as a condition of hire she is required to sign the copy of the Agreement accompanying the letter. Def. Exh. C: Letter of Employment [Dkt. 9-3]. Ms. Butko's signature appears at the bottom of the letter reflecting that she accepted the position "in accordance with the terms specified." Id.

Under these circumstances, it appears clear that Ms. Butko manifested an intent to be bound by the terms in the letter and the Agreement including the arbitration provisions. Ms. Butko has not submitted any evidence to the contrary or otherwise challenged the validity of the Agreement. It therefore appears that the parties entered into a valid arbitration agreement and Ms. Butko is obligated to arbitrate her claims.

D.  Conclusion

Based on the foregoing, it is respectfully recommended that United's motion to compel arbitration [Dkt. 3] be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.D.2 B, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute a waiver of any appellate

rights. Any party opposing objections may file their response to the objections in accordance with Local Civil Rule 72.D.2.

                              Respectfully submitted,

                              /s/ *Amy Reynolds Hay*
                              Chief United States Magistrate Judge

Dated: 5 February, 2010

cc:      The Honorable Joy Flowers Conti
          United States District Judge

          The Honorable Amy Reynolds Hay
          Chief United States Magistrate Judge

          All counsel of record by Notice of Electronic Filing